## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FUJIREBIO DIAGNOSTICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-cv-00659 (GBW) |
| | ) | |
| QUANTERIX CORPORATION, | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| QUANTERIX CORPORATION, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FUJIREBIO DIAGNOSTICS, INC. and | ) | |
| FUJIREBIO EUROPE N.V., | ) | |
| | ) | |
| Counter-Defendants. | ) | |
| | ) | |

### COUNTER-DEFENDANT FUJIREBIO EUROPE N.V.'S OPENING BRIEF
### IN SUPPORT OF ITS MOTION TO DISMISS QUANTERIX CORPORATION'S
### AMENDED COUNTERCLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)

Monté T. Squire (No. 4764)
**DUANE MORRIS LLP**
1201 North Market Street
Suite 501
Wilmington, DE 19801
Phone: (302) 657-4900
mtsquire@duanemorris.com

*Attorneys for Fujirebio
Europe N.V.*

**OF COUNSEL:**

Anthony J. Fitzpatrick (Admitted *Pro Hac Vice*)
Christopher S. Kroon (Admitted *Pro Hac Vice*)
Poornarchita H. Dwarakanath (Admitted *Pro Hac Vice*)
**DUANE MORRIS LLP**
100 High Street, Suite 2400
Boston, MA 02110-1724

Thomas J. Kowalski (Admitted *Pro Hac Vice*)
**DUANE MORRIS LLP**
22 Vanderbilt
335 Madison Avenue, 23rd Floor
New York, NY 10017-4669

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................................. 1

II.  RELEVANT FACTUAL BACKGROUND....................................................................... 2

III.  LEGAL STANDARD ......................................................................................................... 5

IV.  ARGUMENT ....................................................................................................................... 6

    A.  Quanterix's references to FDI and FRE as one collective unit, "Fujirebio," fails to plausibly allege with specificity the allegedly infringing acts of each. ........................................................................................................................ 7

    B.  Quanterix has failed to establish the existence of a relationship between FDI and FRE that justifies lumping them together. ............................................... 12

    C.  Quanterix's Amended Counterclaim should be dismissed with prejudice........... 16

V.  CONCLUSION................................................................................................................. 18

**Federal Cases**

*Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435 (D. Del. 2018) ..........................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................. 5-6, 16

*Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001) ......................................6

*Barmapov v. Amuial*, 986 F.3d 1321 (11th Cir. 2012) ..................................17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................5

*Bench Walk Lighting LLC v. LG Innotek Co., Ltd.*, 530 F. Supp. 3d 468 (D. Del. 2021) .........7, 11

*Blackberry Ltd. v. Nokia Corp.*, No. 17-cv-155-RGA, 2018 WL 1401330 (D. Del. Mar. 20, 2018) ..........................................................................15

*Brit. Telecomms. PLC v. IAC/InteractiveCorp*, 356 F. Supp. 3d 405 (D. Del. 2019) ..................15

*Connelly v. Lane Constr. Corp.,* 809 F.3d 780 (3d Cir. 2016) ......................... 5-6, 9, 16

*Groove Digital, Inc. v. King.com, Ltd.*, No. 1:18-cv-00836-RGA, 2018 WL 6168615 (D. Del. Nov. 26, 2018)..........................................................................10

*IOENGINE, LLC v. PayPal Holdings, Inc.*, Nos. 18-452-WCB, 18-826-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019)....................................................10, 13

*Johnson v. Foster*, No. 4:21-CV-219 (CDL), 2022 WL 17340518 (M.D. Ga. Nov. 30, 2022) ............................................................................17

*M2M Sols. LLC v. Telit Commc'ns PLC*, No. 14–1103–RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015) ............................................................8-9, 12-13

*Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, No. 19-1334-RGA-CJB, 2021 WL 2036671 (D. Del. May 20, 2021) *report and recommendation adopted in relevant part by* 2021 WL 4350591, at *2-3, *6 (D. Del. Sept. 24, 2021) .............................11

*Midwest Energy Emissions Corp. v. Vistra Energy Corp.*, No. 19-1334-RGA-CJB, 2020 WL 3316056 (D. Del. June 18, 2020) .......................................................8

*N. Star Innovations, Inc. v. Toshiba Corp.*, No. 16–115–LPS–CJB, 2016 WL 7107230 (D. Del. Dec. 6, 2016)...................................................7-8, 11-12

*Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, No. 13–2052–LPS, 2014 WL 4675316 (D. Del. Sept. 19, 2014) ...............................................................6, 9

*Novo Nordisk v. Caraco Pharm. Laboratories*, 450 F. Supp. 2d 757 (E.D. Mich. 2006) .................................................................................................................... 12-13

*Pearson v. Component Tech. Corp.*, 247 F.3d 471 (3d Cir. 2001) ................................ 12

*Peñalbert-Rosa v. Fortuño-Burset,* 631 F.3d 592 (1st Cir. 2011) ................................ 6

*In re Processed Egg Prods. Antitrust Litig.*, 931 F. Supp. 2d 654 (E.D. Pa. 2013) .................... 17

*Promos Techs., Inc. v. Samsung Elecs. Co. Ltd.*, No. 18-307-RGA, 2018 WL 5630585 (D. Del. Oct. 31, 2018) ................................................................................ 10

*Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665 (D. Del. 2014) .................... 13, 15

*Sanchez v. Pereira-Castillo*, 590 F.3d 31 (1st Cir. 2009) ............................................ 6

*Sullivan v. Borough of Hellertown*, No. CIV.A. 02–8885, 2003 WL 21664848 (E.D. Pa. June 25, 2003) ............................................................................................ 17

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, No. 16–581–RGA–MPT, 2017 WL 896988 (D. Del. Mar. 7, 2017) ...................................................................... 6, 12, 14-15

*Tigo Energy Inc. v. SMA Solar Tech. Am. LLS*, No. 22-915-GBW, 2023 WL 6990896 (D. Del. Oct. 23, 2023) ...................................................................... 7, 12, 14

*Topsoe, Inc. v. Casale US, Inc.*, No. 3:24-cv-00033, 2025 WL 2523188, slip op. (S.D. Tex. Sept. 2, 2025) ............................................................................ 9, 13

*United States v. Bestfoods*, 524 U.S. 51 (1998) ........................................................ 16

*Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F. Supp. 2d 50 (D. Mass. 2014) .................... 10

**Federal Statutes**

32 U.S.C. § 271(a) ............................................................................................ 2, 7

35 U.S.C. § 271(b) ............................................................................................ 2, 7

35 U.S.C. § 271(c) ............................................................................................ 2, 8

**Rules**

Fed R. Civ. P. 12(b)(6) ........................................................................ 1, 5, 9, 18

Fed. R. Civ. P. 15(a)(2) ...................................................................................... 17

**Non-Periodical Publications**

*Contact*, Fᴜᴊɪʀᴇʙɪᴏ, https://www.fujirebio.com/en-us/about-fujirebio/contact (last visited
Sept. 5, 2025) .................................................................................................................16

**Other Authorities**

U.S. Patent No. 11,275,092.................................................................................*Passim*

## I.  INTRODUCTION

Counter-Defendant Fujirebio Europe N.V. ("FRE") submits this opening brief in support of its Motion to Dismiss Counter-Plaintiff Quanterix Corporation's ("Quanterix") Amended Counterclaim (D.I. 20) for failure to state a claim pursuant to Fed R. Civ. P. 12(b)(6).

Quanterix's Amended Counterclaim is an exercise in futility that adds nothing of substance to cure the glaring defects in its original Counterclaim ("Counterclaim," D.I. 12). Where a claim of infringement is asserted against multiple defendants, notice of infringement must be provided as to the specific infringing activities that are being alleged with respect to each individual defendant. Quanterix's Counterclaim, however, wholly failed to provide such notice to each of FRE and Fujirebio Diagnostics, Inc. ("FDI," and together with FRE, "Counter-Defendants"). Rather than allege specifically with respect to each Counter-Defendant, Quanterix opted instead to refer to both collectively as "Fujirebio," alleging any and all infringing activities only against "Fujirebio." Nor did any of the allegations establish that FDI and FRE had a closer than arms' length-relationship that would warrant lumping both together as "Fujirebio" or otherwise provide any clear indication that all allegations of infringement were being alleged as to both Counter-Defendants. Instead, Quanterix's allegations left each Counter-Defendant confused as to the specific infringement theory being asserted against it.

Though Quanterix had the opportunity to fix these deficiencies in its Amended Counterclaim, Quanterix failed to do so. Despite adding 24 new allegations in the Amended Counterclaim, not even one was related to Quanterix's theories of infringement. Rather, the Amended Counterclaim—the operative counterclaim—is in all material respects the same as the Counterclaim, providing no clarity as to the infringement allegations against each Counter-Defendant. Where, as here, Quanterix has fully wasted an opportunity to cure its pleading

deficiencies, it should not be afforded another. Quanterix's Amended Counterclaim should therefore be dismissed with prejudice.

## II.     RELEVANT FACTUAL BACKGROUND

FDI filed the original Complaint ("Complaint") in this action on May 28, 2025, alleging one count of declaratory judgment of non-infringement of U.S. Patent No. 11,275,092 ("the '092 Patent"). *See* D.I. 1. On June 23, 2025, Quanterix filed its original Answer and Counterclaim, asserting one count of infringement of the '092 Patent against both FDI and FRE, effectively bringing FRE into the litigation where it was not involved before. *See* D.I. 12.

In its Counterclaim, Quanterix provided three paragraphs regarding Counter-Defendants' allegedly infringing activities. But instead of alleging the infringing activities particular to each of FDI and FRE, Quanterix's allegations referred to both collectively as "Fujirebio":

> 42.    Fujirebio directly infringes the '092 patent, including but not limited to claims 1 and 12, in violation of 32 U.S.C. § 271(a), by carrying out the Lumipulse G pTau 217 Plasma Assay and the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay according to the Instructions For Use.

> 43.    Fujirebio infringes the '092 patent, including but not limited to claims 1 and 12, in violation of 35 U.S.C. § 271(b), by actively inducing infringement of the '092 patent, literally or under the doctrine of equivalents, by knowingly and intentionally encouraging others, including but not limited to its customer Labcorp and other end users of the Lumipulse G pTau 217 Plasma Assay and the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay, to directly infringe the '092 patent with knowledge that such conduct infringes the '092 patent. Specifically, Fujirebio's marketing materials and Instructions For Use direct end users to use the Lumipulse G pTau 217 Plasma Assay and the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay in a manner that results in direct infringement of at least claims 1 and 12 of the '092 patent. Furthermore, on information and belief, Fujirebio sales representatives, affiliates, and agents encourage at least end users of the Lumipulse G pTau 217 Plasma Assay and the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay to directly infringe at least claims 1 and 12 of the '092 patent with Fujirebio's knowledge that such conduct constitutes infringement of claims 1 and 12 of the '092 patent.

> 44.    Fujirebio infringes the '092 patent, including but not limited to claims 1 and 12, in violation of 35 U.S.C. § 271(c) by contributing to infringement of the

'092 patent, literally or under the doctrine of equivalents, by among other things selling or offering to sell the Lumipulse G pTau 217 Plasma Assay, the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay, the Lumipulse G pTau 217 Plasma Immunoreaction Cartridges and the Lumipulse G pTau 217 Plasma Calibrators, with knowledge of the '092 patent and knowing that such components are especially made or especially adapted for use in the infringement of at least claims 1 and 12 of the '092 patent, are a material part of the invention of claims 1 and 12 of the '092 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

D.I. 12, ¶¶ 42-44. However, allegations referring exclusively to "Fujirebio" say nothing about the infringing activities particular to each Counter-Defendant.

Quanterix additionally included two jurisdictional allegations—the only allegations that referenced FDI and FRE as separate entities:

7.      This court has personal jurisdiction over [FRE] because, *inter alia*, [FRE], itself and through its subsidiaries, agents, and/or affiliates, including FDI, has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here. On information and belief, [FRE], itself and through its subsidiaries, agents, and/or affiliates, including FDI, develops, manufactures, imports, markets, offers to sell, sells, and/or distributes a broad range of diagnostic tests and related reagents and components throughout the United States, including in Delaware, and therefore transacts business within Delaware relating to Quanterix's counterclaim, and/or has engaged in systematic and continuous business contacts within Delaware.

8.      In addition, this Court has personal jurisdiction over FDI and [FRE] because, among other things, on information and belief, (1) FDI and [FRE] collectively and/or in concert with one another, develop and manufacture the Lumipulse G pTau 217 Plasma Assay and the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay and related reagents and components accused of infringement herein, and (2) FDI and [FRE] collectively and/or in concert with one another, manufacture, distribute, market, use, offer for sale, sell and/or import the Lumipulse G pTau 217 Plasma Assay and the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay and related reagents and components in the United States, including in Delaware, and derive or will derive substantial revenue from the sale, use or consumption of those assays and reagents and components in Delaware.

D.I. 12, ¶¶ 7-8. But because the allegations referred to the activities of "FDI and [FRE] *collectively and/or in concert with one another*," it was unclear whether FRE engaged in any or all of the

foregoing activities or whether FRE operated exclusively "through its subsidiaries, agents, and/or affiliates," and if so, how FDI was involved, if at all. *See id.* Nor did they provide any indication that all infringing activities were being alleged with respect to both Counter-Defendants. Thus, similarly, paragraphs 7-8 of the Counterclaim did not clarify and provide notice of particularly which, if any, infringing activities Quanterix was alleging against each Counter-Defendant.

Quanterix also alleged no particular relationship between FDI and FRE, nor that either controlled the other's infringing activities, asserting at most that they are "subsidiaries, agents, and/or affiliates" of each other that have operated "collectively and/or in concert with one another." *See id.*; *see also* D.I. 20, ¶¶ 7-8 (alleging the same verbatim).

On July 14, 2025, Quanterix filed its Amended Counterclaim, including 24 wholly new allegations. *See* D.I. 20, ¶¶ 22-42, 46-48. Yet, none of these 24 allegations addressed the fundamental problem with the Counterclaim—*i.e.*, lack of notice to the Counter-Defendants of the allegedly infringing activities of each. *See id.* ¶¶ 22-28 (describing the alleged state of the art at the time of the claimed inventions in the '092 Patent), 29-33 (describing how the claimed methods in the '092 Patent allegedly reflect solutions to problems described in the prior art), 34-42 (providing a brief recitation of the prosecution history to describe how the '092 Patent is nonobvious), 46-48 (describing the operation and functionality of the Lumipulse G pTau 217 Plasma Immunoreaction Cartridges, Lumipulse G pTau 217 Plasma Assay, and the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay). The Amended Counterclaim also did not amend the allegations in paragraphs 7-8 and 42-44 of the Counterclaim to include individual allegations of infringement against either Counter-Defendant, provide any indication that all allegations of infringement were being asserted against both Counter-Defendants, or otherwise plausibly allege the existence of an agency or other relationship that could justify lumping FDI and FRE as a

collective unit. *Compare* D.I. 12, ¶¶ 7-8, *and* 42-44, *with* D.I. 20, ¶¶ 7-8, *and* 66-68 (employing same language as in Counterclaim). In all pertinent respects, the Amended Counterclaim is exactly the same as the Counterclaim.

## III.    LEGAL STANDARD

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facial plausibility standard requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, the standard requires the plaintiff to allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

The Third Circuit has held that "a court reviewing the sufficiency of a complaint must take three steps. First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'" *Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (*quoting Iqbal,* 556 U.S. at 675). "Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (*quoting Iqbal,* 556 U.S. at 675). "Finally, '[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (alterations in original) (*quoting Iqbal,* 556 U.S. at 679).

Allegations that are "merely conclusory[] [are] not entitled to the presumption of truth." *Id.* at 789. This requires the Court to distinguish between "legal conclusions, which are discounted in the analysis, and allegations of historical fact, which are assumed to be true even if 'unrealistic

or nonsensical,' 'chimerical,' or 'extravagantly fanciful.'" *Id.* (*quoting Iqbal,* 556 U.S. at 681).

Additionally, the Third Circuit has held that "[p]erhaps 'some allegations, while not stating

ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the

line between the conclusory and the factual,' but the clearest indication that an allegation is

conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies

a legal point." *Id.* at 790 (*quoting Peñalbert-Rosa v. Fortuño-Burset,* 631 F.3d 592, 595 (1st Cir.

2011)).

## IV.    ARGUMENT

Where a claim is asserted against multiple defendants, sufficient facts showing a

plausibility of entitlement to relief must be pled with respect to *each defendant*. *See Sanchez v.

Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009) ("In response to a motion to dismiss, [the court]

must determine whether, *as to each defendant,* a plaintiff's pleadings are sufficient to state a claim

on which relief can be granted."); *Peñalbert-Rosa*, 631 F.3d at 594 ("[S]ave under special

conditions, an adequate complaint must include not only a plausible claim but also a plausible

defendant."). A plaintiff cannot simply "lump" together defendants without specifically alleging

the facts giving rise to a claim for relief against each defendant. *See Neology, Inc. v. Kapsch

Trafficcom IVHS, Inc.*, No. 13–2052–LPS, 2014 WL 4675316, at *4 (D. Del. Sept. 19, 2014)

("These kinds of allegations, specific to no Defendant and generic as to all, are unhelpful in further

flushing out a facially plausible claim of [defendants'] pre-suit knowledge.") (citing *Atuahene v.

City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)); *T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*,

No. 16–581–RGA–MPT, 2017 WL 896988, at *7 (D. Del. Mar. 7, 2017) ("Recent decisions in this

court make clear that plaintiffs cannot combine allegations against multiple defendants."). This

requires a plaintiff to allege either (1) why each defendant is *individually* liable or (2) that a parent-

subsidiary relationship exists that warrants "lumping" defendants together. Quanterix has alleged neither.

A.     **Quanterix's references to FDI and FRE as one collective unit, "Fujirebio," fails to plausibly allege with specificity the allegedly infringing acts of each.**

In order to plausibly plead a claim against multiple defendants, a plaintiff must specify "which, if any, . . . act[] [is] actually being attributed to each Defendant." *See N. Star Innovations, Inc. v. Toshiba Corp.*, No. 16–115–LPS–CJB, 2016 WL 7107230, at *2 (D. Del. Dec. 6, 2016). That is, "the plaintiff needs to plead enough facts to render it plausible that each defendant *individually* has performed at least one type of U.S.-related infringing act." *Bench Walk Lighting LLC v. LG Innotek Co., Ltd.*, 530 F. Supp. 3d 468, 488 (D. Del. 2021) (emphasis added).

Claims of infringement are not considered to have "been made against each specific defendant" where a "complaint [] exclusively refer[s] to [] two defendants as one unit." *See Tigo Energy Inc. v. SMA Solar Tech. Am. LLS*, No. 22-915-GBW, 2023 WL 6990896, at *12 (D. Del. Oct. 23, 2023). That, however, is precisely what Quanterix has done here. As reproduced in relevant part below, in every allegation in its Counterclaim 1, Quanterix refers *exclusively* to "Fujirebio":

66.     *Fujirebio directly infringes* the '092 patent, including but not limited to claims 1 and 12, in violation of 32 U.S.C. § 271(a), by carrying out the Lumipulse G pTau 217 Plasma Assay and the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay according to the Instructions For Use.

67.     *Fujirebio infringes* the '092 patent, including but not limited to claims 1 and 12, in violation of 35 U.S.C. § 271(b), *by actively inducing infringement* of the '092 patent, literally or under the doctrine of equivalents, *by knowingly and intentionally encouraging others*, including but not limited to *its customer* Labcorp and other end users of the Lumipulse G pTau 217 Plasma Assay and the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay, to directly infringe the '092 patent with knowledge that such conduct infringes the '092 patent. Specifically, Fujirebio's marketing materials and Instructions For Use direct end users to use the Lumipulse G pTau 217 Plasma Assay and the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay in a manner that results in direct infringement of at least claims 1 and

12 of the '092 patent. Furthermore, on information and belief, *Fujirebio sales representatives, affiliates, and agents* encourage at least end users of the Lumipulse G pTau 217 Plasma Assay and the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay to directly infringe at least claims 1 and 12 of the '092 patent with Fujirebio's knowledge that such conduct constitutes infringement of claims 1 and 12 of the '092 patent.

68.     *Fujirebio infringes* the '092 patent, including but not limited to claims 1 and 12, in violation of 35 U.S.C. § 271(c) *by contributing to infringement* of the '092 patent, literally or under the doctrine of equivalents, *by among other things selling or offering to sell* the Lumipulse G pTau 217 Plasma Assay, the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay, the Lumipulse G pTau 217 Plasma Immunoreaction Cartridges and the Lumipulse G pTau 217 Plasma Calibrators, with knowledge of the '092 patent and knowing that such components are especially made or especially adapted for use in the infringement of at least claims 1 and 12 of the '092 patent, are a material part of the invention of claims 1 and 12 of the '092 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

D.I. 20, ¶¶ 66-68 (emphases added). But because "Fujirebio" refers to both FDI and FRE, it is unclear which entity Quanterix alleges as having committed the above allegedly infringing acts. *See N. Star Innovations*, 2016 WL 7107230, at *2 (agreeing with defendants that "Plaintiff failed to identify which entity is responsible for any particular alleged infringing activity . . . [where it] simply referr[ed] to all three Toshiba entities as 'Defendants' in each" count of infringement).

Quanterix's failure to specifically allege infringing activities against each of FDI and FRE is especially problematic with respect to its inducement and contributory infringement claims, *see* D.I. 20, ¶¶ 67-68, which require "identify[ing] which entities . . . have actually induced [or contributed to] infringement, by which actions they are said to have done so, and how such actions encouraged another to infringe" or contributed to another's infringement, *see Midwest Energy Emissions Corp. v. Vistra Energy Corp.*, No. 19-1334-RGA-CJB, 2020 WL 3316056, at *3 n.7 (D. Del. June 18, 2020). *See also M2M Sols. LLC v. Telit Commc'ns PLC*, No. 14–1103–RGA, 2015 WL 4640400, at *4 (D. Del. Aug. 5, 2015) ("[F]using the two Defendants as one is also problematic for Plaintiff's indirect infringement claims."). Particularly, "[w]ith regard to inducement claims,

this Court has held that '[w]hen articulating certain of its inducement allegations,' the plaintiff has to identify 'which particular Defendant or Defendants are said to have disseminated the training or instructional materials at issue.'" *See id.* at *4 (second alteration in original) (quoting *Neology*, 2014 WL 4675316, at *7). But Quanterix merely alleges that "Fujirebio's marketing materials and Instructions For Use" and "sales representatives, affiliates, and agents" "encourage . . . end users of the Lumipulse G pTau 217 Plasma Assay and the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay to directly infringe . . . the '092 patent," without establishing which entity the alleged marketing materials, Instructions For Use, sales representatives, affiliates, and agents belong to—FDI, FRE, or both. *See* D.I. 20, ¶ 67.

Furthermore, though Quanterix "realleges and incorporates by reference [all] preceding paragraphs of [its] Counterclaims," *see* D.I. 20, ¶ 62, its prior allegations are also insufficient to plausibly establish that FRE committed any infringing acts. In its jurisdictional allegations—the only allegations in which FDI and FRE are referred to as separate entities—Quanterix merely alleges that "[FRE], itself and through its subsidiaries, agents, and/or affiliates, including FDI, develop[ed], manufacture[d], import[ed], market[ed], offer[ed] to sell, [sold], and/or distribut[ed] a broad range of diagnostic tests and related reagents and components throughout the United States." *See* D.I. 20, ¶ 7; *see also id.* ¶ 8 (alleging same with respect to "FDI and [FRE] collectively and/or in concert with one another" but specifying diagnostics tests). Such allegations are, at best, conclusory, and hence insufficient to survive a Rule 12(b)(6) motion to dismiss. *See Connelly,* 809 F.3d at 789-90; *see also Topsoe, Inc. v. Casale US, Inc.*, No. 3:24-cv-00033, 2025 WL 2523188, slip op. at *17 (S.D. Tex. Sept. 2, 2025) (noting plaintiff's conclusory allegations which reference Casale US only 23 times in a 43-page complaint, and all in the introductory, jurisdiction, and venue sections). And at worst, they "provide[] no factual assertions about" FRE's U.S.-related

9

infringement activities. *See Promos Techs., Inc. v. Samsung Elecs. Co. Ltd.*, No. 18-307-RGA, 2018 WL 5630585, at *3 (D. Del. Oct. 31, 2018) (holding that although preceding paragraphs were incorporated by reference, preceding jurisdictional allegations were "insufficient to allege infringement . . . as [they] provide[d] no factual assertion[s] about whether any Defendant makes, uses, offers to sell, or sells the infringing products within the United States, or imports them into the United States").

Nor do the jurisdictional allegations provide any indication as to whether "each and every allegation" is being made against both Counter-Defendants. *See Groove Digital, Inc. v. King.com, Ltd.*, No. 1:18-cv-00836-RGA, 2018 WL 6168615, at *1 (D. Del. Nov. 26, 2018) ("[A] complaint that collectively refers to defendants meets Rule 8's pleading standard if 'it can be reasonably inferred that each and every allegation is made against each individual defendant.'") (quoting *Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F. Supp. 2d 50, 53-54 (D. Mass. 2014)); *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 447 (D. Del. 2018) ("[A]s its Complaint indicates, [plaintiff] is alleging that both of the Defendants did everything."). Unlike in *Groove Digital*, the Amended Counterclaim does not distinguish any allegedly infringing acts committed by FDI from those allegedly committed by FRE. *Compare* D.I. 20, ¶¶ 7-8*, with Groove Digital*, 2018 WL 6168615, at *1 ("Plaintiff specifically identifies Defendant King.com, Ltd. as committing certain allegedly infringing acts in Paragraph 9 of the Complaint. . . . Plaintiff goes on to allege specific acts of Defendants King.com, Inc. and King.com (U.S.), LLC in Paragraph 10."). At best, Quanterix alleges acts in which FDI and FRE engaged "collectively and/or in concert," not how each Counter-Defendant acted "*individually* and collectively." *Compare* D.I. 20, ¶ 8*, with IOENGINE, LLC v. PayPal Holdings, Inc.*, Nos. 18-452-WCB, 18-826-WCB, 2019 WL 330515, at *10-11 (D. Del. Jan. 25, 2019) ("[T]he counterclaims, which allege that the defendants

'*individually* and collectively' committed each of the accused infringing acts, effectively allege that the defendants all 'did everything.'") (emphasis added). There are simply no allegations of each *individual* Counter-Defendant's U.S.-related infringing acts. *See Bench Walk Lighting*, 530 F. Supp. 3d at 488.

Quanterix's allegations thus leave each Counter-Defendant wondering which, if any, directly infringing acts it allegedly engaged in; whether it allegedly induced infringement by encouraging Labcorp and other end users to directly infringe the '092 Patent; whether it allegedly contributed to infringement of the '092 Patent by selling or offering to sell the Lumipulse G pTau 217 Plasma Assay, the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay, the Lumipulse G pTau 217 Plasma Immunoreaction Cartridges and the Lumipulse G pTau 217 Plasma Calibrators; or whether its purported liability is premised solely on the allegedly infringing acts of its "subsidiaries, agents, and/or affiliates." *See* D.I. 20, ¶¶ 7-8, 6-68. Where such fundamental questions are left unanswered, the Court cannot find that the Amended Counterclaim provides sufficient notice as to the allegedly infringing activities of each Counter-Defendant. *See Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, No. 19-1334-RGA-CJB, 2021 WL 2036671, at *4-6 (D. Del. May 20, 2021) (recommending dismissal of 12 defendants where allegations lumping multiple defendants together left court grappling with similar questions as to those here), *report and recommendation adopted in relevant part by* 2021 WL 4350591, at *2-3, *6 (D. Del. Sept. 24, 2021); *see also N. Star Innovations*, 2016 WL 7107230, at *2 ("[N]owhere in any part of the [operative complaint] is it clearly alleged that either Defendant takes part in any *specific* infringing act—instead, it is vaguely alleged that they may commit one 'or' another 'or' some 'or' all of the relevant possible acts that would amount to direct infringement. This leaves the reader confused about which, if any, of these acts are actually being attributed to each Defendant.").

Therefore, Quanterix's allegations referring to FDI and FRE as one collective unit, "Fujirebio," fails to plausibly allege with specificity the allegedly infringing acts of each. *See Tigo Energy*, 2023 WL 6990896, at *12; *N. Star Innovations*, 2016 WL 7107230, at *2 (agreeing that "Plaintiff failed to identify which entity is responsible for any particular alleged infringing activity, . . . [where it] simply refer[red] to all three Toshiba entities as 'Defendants'").

**B.** **Quanterix has failed to establish the existence of a relationship between FDI and FRE that justifies lumping them together.**

In lieu of individual allegations, a plaintiff may plead a facially plausible claim by "lumping" defendants together in its allegations, *if* the plaintiff alleges "(1) the existence of a parent-subsidiary relationship, and (2) facts that justify piercing the corporate veil.'" *M2M Sols.*, 2015 WL 4640400, at *3 (quoting *Novo Nordisk v. Caraco Pharm. Laboratories*, 450 F. Supp. 2d 757, 761 (E.D. Mich. 2006)). Quanterix, however, has failed to set forth facts that warrant "piercing the corporate veil."

The corporate veil may be pierced where the plaintiff alleges that the defendants are alter egos of each other. But Quanterix does not allege that FDI and FRE are alter egos of each other— nor could it—as it has not alleged that any of the relevant factors apply. *See Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484-85 (3d Cir. 2001) (requiring that some or all of the following factors be alleged: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder"); *see also T-Jat Sys. 2006*, 2017 WL 896988, at *5 (finding plaintiff failed to establish alter ego theory where only two factors alleged and fundamental "element of fraud or injustice" not shown);

*see also Topsoe*, 2025 WL 2523188, slip op. at \*17-18 (recommending dismissal of claims against Casale US where alter ego theory not pled, and allegations "speak to" only a few alter ego factors).

Alternatively, the second condition may be satisfied by an agency relationship "between the entities where the parent effectively controls the conduct of the subsidiary." *M2M Sols.*, 2015 WL 4640400, at \*3 (quoting *Novo Nordisk*, 450 F. Supp. 2d at 761). "The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length." *Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 679 (D. Del. 2014) (citations omitted). "Among the factors for determining whether an agency relationship exists are: '[1] the extent of overlap of officers and directors, [2] methods of financing, [3] the division of responsibility for day-to-day management, and [4] the process by which each corporation obtains its business.'" *Id.* (citations omitted).

Here, Quanterix has failed to establish that either FDI or FRE *control* the activities of the other or otherwise operate at "nearer than arm's length." *See id.*; *see also M2M Sols.*, 2015 WL 4640400, at \*3 ("In its complaint, Plaintiff alleges the existence of a parent-subsidiary relationship. . . . However, *nowhere* in its complaint does Plaintiff present facts that demonstrate the parent's *effective control* over the subsidiary.") (emphases added) (internal citations omitted). Nowhere in its Amended Counterclaim does Quanterix allege that there was an overlap of officers or directors between FDI and FRE, that their finances were commingled, how responsibility for daily management was divided, or how each obtained business. *See generally* D.I. 20; *see also Robert Bosch LLC*, 70 F. Supp. 3d at 679; *IOENGINE*, 2019 WL 330515, at \*10-11 (finding agency relationship might exist where counterclaim-plaintiff alleged that counterclaim-defendant "exercise[d] close supervisory control over the day-to-day operations of its U.S. operating

company . . . , including involvement in contracting for the assembly of the accused products"); *T-JAT Sys. 2006*, 2017 WL 896988, at *2, *5-6 (finding it reasonable to infer parent company's control over subsidiaries where plaintiff alleged parent controlled, directed, or otherwise authorized activities of subsidiaries, including having "a shared corporate headquarters, a shared principal executive office address, and shared directors and executive officers"). To the contrary, Quanterix has alleged that FDI and FRE are separate entities organized and existing under the laws of different countries, with distinct corporate headquarters that are on completely separate continents. *See, e.g.*, D.I. 20, ¶¶ 2-3.

There must be sufficiently specific allegations to answer in the affirmative "[t]he fundamental question [of] whether the parent and subsidiary entered into a limited agency relationship for the transaction giving rise to the claim," *T-JAT Sys. 2006*, 2017 WL 896988, at *6. Unlike in *Tigo Energy*, where the plaintiff alleged SMA AG "warrant[ed] SMA America's infringing products and provide[d] instruction manuals for the infringing products to SMA America's U.S. customers"; held the certifications for the accused products; owned relevant trademarks and copyrights; and was listed as a real party-in-interest, Quanterix presents absolutely no *specific factual* allegations that FDI and FRE operate in concert. *See* 2023 WL 6990896, at *9. Notably, in its *70*-paragraph Amended Counterclaim, Quanterix includes *only two* paragraphs describing FDI and FRE as separate entities:

> 7.       This court has personal jurisdiction over [FRE] because, *inter alia*, *[FRE], itself and through its subsidiaries, agents, and/or affiliates, including FDI*, has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being hailed into court here. On information and belief, *[FRE], itself and through its subsidiaries, agents, and/or affiliates, including FDI, develops, manufactures, imports, markets, offers to sell, sells, and/or distributes* a broad range of diagnostic tests and related reagents and components throughout the United States, including in Delaware, and therefore transacts business within Delaware

8.     In addition, this Court has personal jurisdiction over FDI and [FRE] because, among other things, on information and belief, (1) *FDI and [FRE] collectively and/or in concert with one another, develop and manufacture* the Lumipulse G pTau 217 Plasma Assay and the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay and related reagents and components accused of infringement herein, and (2) *FDI and [FRE] collectively and/or in concert with one another, manufacture, distribute, market, use, offer for sale, sell and/or import* the Lumipulse G pTau 217 Plasma Assay and the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay and related reagents and components in the United States, including in Delaware, and derive or will derive substantial revenue from the sale, use or consumption of those assays and reagents and components in Delaware.

*See* D.I. 20, ¶¶ 7-8 (emphases added). Such limited allegations are insufficient to establish the existence of an agency relationship. *Compare Blackberry Ltd. v. Nokia Corp.*, No. 17-cv-155-RGA, 2018 WL 1401330, at *2 (D. Del. Mar. 20, 2018) ("Plaintiff's direct infringement claims against NSN Holdings USA and Nokia Corporation . . . based entirely on [three paragraphs describing] these entities' relationships to NSN US . . . does not state facts supporting the existence of an agency relationship between any of the Defendants, nor does it state facts that justify piercing the corporate veil."*), with Brit. Telecomms. PLC v. IAC/InteractiveCorp*, 356 F. Supp. 3d 405, 412 (D. Del. 2019) (finding "30 paragraphs of factual allegations, with references to Annual Reports, news articles, and websites, discussing the relationship between IAC, MGI, and their subsidiaries and sub-subsidiaries" sufficient to establish agency liability).

Indeed, although Quanterix has alleged the existence of some kind of a corporate relationship between FDI and FRE, *see* D.I. 20, ¶ 7, it is not clear from the allegations what that relationship even is—*i.e.*, whether one is the parent of the other, whether they are both subsidiaries of the same parent company, or whether some other relationship exists between the two—much less which entity controls the other. *See Robert Bosch*, 70 F. Supp. 3d at 679; *T-JAT Sys. 2006,*

2017 WL 896988, at *6 ("[A]gency claims implicitly survive a 12(b)(6) attack for facial implausibility *if* they provide sufficient facts connecting the parent and subsidiary companies, and the *control of the parent* over the acts of the subsidiary.") (emphases added). And threadbare recitals of operating "through [] subsidiaries, agents, and/or affiliates" or "collectively and/or in concert with one another" do not suffice. *See* D.I. ¶¶ 7-8; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Connelly,* 809 F.3d at 790 ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual.") (citations omitted).

Without establishing the existence of a clear agency relationship, Quanterix's basis for lumping both FDI and FRE together appears to rest entirely on the *unalleged* fact that both are two—of many—entities under the umbrella of the multinational company Fujirebio. *See Contact*, FUJIREBIO, https://www.fujirebio.com/en-us/about-fujirebio/contact (last visited Sept. 5, 2025). By Quanterix's logic, then, Disneyland Paris can be lumped together with Disneyland, simply because they are both owned and operated by Disney. Such a theory is both illogical and contrary to law. *See, e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries.") (citations omitted).

Thus, Quanterix has failed to establish the existence of a relationship between FDI and FRE that justifies lumping them together.

## C.    <u>Quanterix's Amended Counterclaim should be dismissed with prejudice.</u>

Quanterix peculiarly chose to assert its Counterclaim against both FDI and FRE, even though FRE was not a plaintiff to the Complaint, was not mentioned anywhere in the Complaint,

and by Quanterix's own allegation, is an entity organized and operating entirely outside the United States. *See* D.I. 20, ¶ 3. Quanterix had absolutely no basis for bringing FRE into this suit. If it did, it would have alleged as much in its Counterclaim, thereby clearly asserting its infringement theory against each Counter-Defendant. Rather, Quanterix chose to refer to both FDI and FRE collectively as, and assert all allegations only against, "Fujirebio." When Quanterix had the opportunity in its Amended Counterclaim to cure these deficiencies, Quanterix opted instead to plead 24 new allegations wholly unrelated to its infringement theory.

At every step along the way, Quanterix could have pled a facially plausible counterclaim, but it failed to do so. Quanterix squandered every opportunity and continued to make choices that, in the end, renders each Counter-Defendant confused about what specifically Quanterix is alleging against it. Under such circumstances, courts do not "freely give leave" for further amendments. *See* Fed. R. Civ. P. 15(a)(2); *Barmapov v. Amuial*, 986 F.3d 1321, 1326 (11th Cir. 2012) (dismissing second amended complaint with prejudice where plaintiff "squandered" the opportunity to replead "by filing another shotgun pleading"); *Johnson v. Foster*, No. 4:21-CV-219 (CDL), 2022 WL 17340518, at *1 (M.D. Ga. Nov. 30, 2022) (dismissing with prejudice amended complaint, where plaintiff "assert[ed] 'multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions,'" because he "squandered the opportunity to cure the deficiencies, [and] does not deserve another chance, which would likely prove futile") (quoting and citing *Barmapov*, 986 F.3d at 1325-26); *In re Processed Egg Prods. Antitrust Litig.*, 931 F. Supp. 2d 654, 665 (E.D. Pa. 2013) (granting defendants' motion to dismiss with prejudice and noting that "the Court will not indulge the Plaintiffs in yet another opportunity to amend their Complaint" because they "had ample opportunities to cure their pleading deficiencies"); *see also Sullivan v. Borough of Hellertown*, No. CIV.A. 02–8885, 2003 WL 21664848, at *1 & n.1 (E.D.

Pa. June 25, 2003) ("[T]he entire action will be dismissed *with prejudice* because all of the claims, including the first claim, fail to state a claim upon which relief may be granted pursuant to Rule 12(b)(6)."). Neither should this Court. Quanterix should not be afforded another opportunity to plead. Accordingly, this Court should dismiss Quanterix's Amended Counterclaim with prejudice.

## V.  CONCLUSION

For the foregoing reasons, FRE respectfully requests that the Court dismiss Quanterix's Amended Counterclaim in its entirety with prejudice.

Dated: September 5, 2025

Respectfully Submitted,

**DUANE MORRIS LLP**

*/s/ Monté T. Squire*
Monté T. Squire (No. 4764)
1201 North Market Street, Suite 501
Wilmington, DE 19801
Phone: (302) 657-4900
mtsquire@duanemorris.com

**OF COUNSEL:**

Anthony J. Fitzpatrick
(Admitted *Pro Hac Vice*)
Christopher S. Kroon
(Admitted *Pro Hac Vice*)
Poornarchita H. Dwarakanath
(Admitted *Pro Hac Vice*)
**DUANE MORRIS LLP**
100 High Street, Suite 2400
Boston, MA 02110-1724

Thomas J. Kowalski
(Admitted *Pro Hac Vice*)
**DUANE MORRIS LLP**
335 Madison Avenue, 23rd Floor
New York, NY 10017-4669

*Attorneys for Fujirebio Europe N.V.*