IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FUJIREBIO DIAGNOSTICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 25-659 (GBW) |
| v. | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| QUANTERIX CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| QUANTERIX CORPORATION, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FUJIREBIO DIAGNOSTICS, INC., | ) | |
| FUJIREBIO EUROPE N.V., | ) | |
| | ) | |
| Counter-Defendants. | ) | |
| | ) | |

**DEFENDANT AND COUNTER-PLAINTIFF QUANTERIX CORPORATION'S
OPPOSITION TO FUJIREBIO EUROPE N.V.'S MOTION TO DISMISS AMENDED
COUNTERCLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)**

OF COUNSEL:

Elizabeth M. Flanagan (#5891)
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Orion Armon
COOLEY LLP
1144 15th Street
Suite 2300
Denver, CO 80202

October 24, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
Ben Yenerall (#7132)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com
cclark@morrisnichols.com
byenerall@morrisnichols.com

*Attorneys for Defendant and Counter-Plaintiff
Quanterix Corporation*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     NATURE AND STAGE OF PROCEEDINGS ..................................................... 2

III.    SUMMARY OF ARGUMENTS............................................................................ 2

IV.     STATEMENT OF RELEVANT FACTS .............................................................. 3

      A.      Quanterix Identified FRE as a Counter-Defendant Based on Public
             Information Linking it to the Accused Lumipulse Assays ................................... 3

      B.      The Amended Counterclaim Includes Plausible Allegations of
             Infringement by FRE ......................................................................................... 4

V.      ARGUMENT .......................................................................................................... 7

      A.      Rules 8 and 12 Require Plausible Allegations of Infringement........................... 7

      B.      Counter-Plaintiff's References to Fujirebio and the Corresponding Factual
             Allegations Plausibly Allege That Each Counter-Defendant Engaged in
             the Accused Conduct (Direct and Indirect Infringement)................................... 8

      C.      Collective Shorthand Is Proper for Related Sister Companies and No
             Parent-Subsidiary Showing Is Required ........................................................... 14

      D.      Should the Court Find Quanterix's Complaint Deficient, Quanterix Should
             Be Granted Leave to Amend............................................................................. 17

VI.     CONCLUSION..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................7

*Barmapov v. Amuial*,
  986 F.3d 1321 (11th Cir. 2012) ...........................................................................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................7

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012).............................................................................11

*Blackberry Ltd. v. Nokia Corp.*,
  No. 17-cv-155-RGA, 2018 WL 1401330 (D. Del. Mar. 20, 2018) .......................16

*British Telecommunications PLC v. IAC/InteractiveCorp*,
  356 F. Supp. 3d 405 (D. Del. 2019)......................................................................17

*Buck v. Hampton Twp. Sch. Dist.*,
  452 F.3d 256 (3d Cir. 2006)..................................................................................16

*Data Health Partners, Inc. v. Teladoc Health, Inc.*,
  734 F. Supp. 3d 315 (D. Del. 2024)......................................................................16

*DermaFocus LLC v. Ulthera, Inc.*,
  201 F. Supp. 3d 465 (D. Del. 2016)........................................................................8

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
  888 F.3d 1256 (Fed. Cir. 2018).........................................................................9, 13

*Foman v. Davis*,
  371 U.S. 178 (1962)...........................................................................................17, 18

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)................................................................................................11

*Greatbatch Ltd. v. AVX Corp.*,
  No. CV 13-723-LPS, 2014 WL 491683 (D. Del. Feb. 4, 2014) ...........................18

*Groove Digit., Inc. v. King.com, Ltd.*,
  No. 1:18-CV-00836-RGA, 2018 WL 6168615 (D. Del. Nov. 26, 2018) ...................... *passim*

ii

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
 Nos. 18-452-WCB, 18-826-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019)................12, 17

*Johnson v. Foster*,
 No. 4:21-CV-219 (CDL), 2022 WL 17340518 (M.D. Ga. Nov. 30, 2022)............................19

*M2M Sols. LLC v. Telit Commc'ns PLC*,
 No. 14–1103–RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015)...............................11, 14, 16

*Mayne Pharma Int'l PTY Ltd. v. Merck & Co.*,
 No. 15-438-LPS-CJB, 2015 WL 7833206 (D. Del. Dec. 3, 2015).........................................13

*N. Star Innovations, Inc. v. Toshiba Corp.*,
 No. 16–115–LPS–CJB, 2016 WL 7107230 (D. Del. Dec. 6, 2016)..................................12, 14

*Nalco Co. v. Chem-Mod., LLC*,
 883 F.3d 1337 (Fed. Cir. 2018)........................................................................................8, 13

*Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*,
 No. 13–2052–LPS, 2014 WL 4675316 (D. Del. Sept. 19, 2014) ...........................................14

*Phillips v. Cnty. of Allegheny*,
 515 F.3d 224 (3d Cir. 2008)...................................................................................................7

*In re Processed Egg Prods. Antitrust Litig.*,
 931 F. Supp. 2d 654 (E.D. Pa. 2013) ....................................................................................19

*Robert Bosch LLC v. Alberee Prods., Inc.*,
 70 F. Supp. 3d 665 (D. Del. 2014) ........................................................................................14

*Sullivan v. Borough of Hellertown*,
 No. CIV.A. 02–8885, 2003 WL 21664848 (E.D. Pa. June 25, 2003) ....................................19

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*,
 No. 16–581–RGA–MPT, 2017 WL 896988 (D. Del. Mar. 7, 2017)................................14, 16

*The Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Trust*
 No. C.A. 09-300-LPS, 2011 WL 710970 (D. Del. Feb. 22, 2011) ........................................18

*Tigo Energy Inc. v. SMA Solar Tech. Am. LLS*,
 No. 22-915-GBW, 2023 WL 6990896 (D. Del. Oct. 23, 2023) .........................................12, 17

*TriDiNetworks Ltd. v. NXP-USA, Inc.*,
 No. CV 19-1062-CFC-CJB, 2020 WL 2514086 (D. Del. May 15, 2020)..................... *passim*

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*,
 863 F. Supp. 186 (D. Del. 1993)...........................................................................................15

**Statutes**

35 U.S.C. § 271(a) ...........................................................................................4, 7

35 U.S.C. § 271(b) ...........................................................................................7, 11

35 U.S.C. § 271(c) ...........................................................................................7, 11

**Other Authorities**

FED. R. CIV. P. 8(a)(2) .........................................................................................7

FED. R. CIV. P. 10(c) .........................................................................................8, 11

FED. R. EVID. 201 ...............................................................................................16

FED. R. CIV. P. 15(a)(2) .......................................................................................17

## I.    INTRODUCTION

Counter-Defendant Fujirebio Europe N.V.'s ("FRE") argument that the Amended Counterclaim does not put it on notice of any plausible theory of infringement and so should be dismissed in its entirety rings hollow.[1]  The Amended Counterclaim does not come out of nowhere. It follows directly from the request of FRE's sister company, Fujirebio Diagnostics, Inc. ("FDI"), for a declaratory judgment that two diagnostic assays referred to as the "Lumipulse Plasma Assay" and "Lumipulse Plasma Ratio Assay" do not infringe Quanterix's U.S. Patent No. 11,275,092 ("'092 Patent").  (*See generally* D.I. 1.)  The Amended Counterclaim is essentially a mirror-image affirmative claim for patent infringement.  (*See generally* D.I. 20.)  It adds FRE as a counter-defendant, however, because FRE plausibly plays a role in the alleged infringement, too.  Indeed, product packaging and instructions referenced in the Amended Counterclaim originates from FRE. The Amended Counterclaim thus alleges that FDI and FRE, alone or in concert, are infringing the '092 Patent.  Not only is this not impermissible "lumping" of the defendants as FRE erroneously asserts, it is well supported by both FRE and FDI's corporate disclosure statements, which clearly place FRE and FDI within the same corporate umbrella, and thus position them as sister companies.  (D.I. 4; D.I. 23.)

FRE well knows why it is accused of infringement—public information plausibly suggests it plays a role in, at minimum, importing into and/or selling within the United States components of the accused Lumipulse assays, and disseminating instructions to customers to use them in a manner that results in infringement of the '092 Patent.  FRE's attempt to feign ignorance should

---

[1] Incredibly, while FRE is the only counter-defendant to raise a Rule 12(b)(6) defense, it nonetheless seeks the drastic relief of dismissing the Amended Counterclaim as to co-defendant FDI, too.  There is no legal basis to do so and, in any event, the proposed Second Amended Complaint submitted herewith directly addresses and resolves FRE's pleading criticisms and should be permitted if the Court determines the Amended Counterclaim is deficient.

not be countenanced.  The Amended Counterclaim satisfies Rule 8 and does not violate Rule 12.  FRE's motion should be denied.

## II.     NATURE AND STAGE OF PROCEEDINGS

This case began with FDI filing a complaint seeking a declaratory judgment of non-infringement of Quanterix's '092 Patent on May 28, 2025.  (D.I. 1.)  In parallel, FDI filed a petition for *inter partes* review of the '092 Patent.  On June 23, 2025, Quanterix Answered the Complaint and filed a Counterclaim for infringement of the '092 Patent against FDI and its corporate sister, FRE.  (D.I. 12.)  The parties then negotiated an extension for FDI and FRE to answer the Counterclaim.  (*See* D.I. 19.)  At no point during those negotiations did FDI or FRE raise any concerns with the plausibility of Quanterix's Counterclaim for infringement against either entity.  On July 14, 2025, Quanterix filed its Amended Counterclaim, which is now operative.  (D.I. 20 (the "Amended Counterclaim").)

On September 5, 2025, FRE filed the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted at issue here, (D.I. 22 ("Motion")), and FDI filed a Motion to Dismiss on § 101 grounds.  (D.I. 25.)  On October 17, 2025, the USPTO denied institution of FDI's petition for *inter partes* review (IPR2025-01060), granting Quanterix's request for discretionary denial.

The Rule 16 conference has not yet been set.  No discovery has taken place.

## III.    SUMMARY OF ARGUMENTS

The Amended Counterclaim plausibly states a claim for patent infringement against FRE.  The pleading contains factual assertions that support reasonable inferences that FRE has committed acts of infringement, both direct and indirect, thereby providing notice of Quanterix's allegations.  In arguing otherwise, FRE asks the Court to create a new heightened pleading standard in contravention of controlling law that would require Quanterix to prove its case at the pleading

2

stage, and that would require the Court to make inferences in favor of the moving party—not the non-moving party.

The Amended Counterclaim appropriately treats FDI and FRE collectively as "Fujirebio" and FRE's "lumping" objection does not warrant dismissal. The Amended Counterclaim defines "Fujirebio" to encompass two sister entities working in concert and ties the claims to specific products, methods, and acts, thereby satisfying the notice requirement of Rule 8. Any request for entity-by-entity evidentiary parsing goes to discovery on the merits—not Rule 12. FRE has sufficient notice of Quanterix's infringement allegations to answer the Amended Counterclaim and raise defenses. FRE's motion should be denied.

## IV. STATEMENT OF RELEVANT FACTS

### A. Quanterix Identified FRE as a Counter-Defendant Based on Public Information Linking it to the Accused Lumipulse Assays

FDI started this case by filing a complaint requesting a declaratory judgment of non-infringement of the '092 Patent in relation to two Lumipulse diagnostic assays. (D.I. 1.) In that pleading, FDI describes its own role in the product line, stating that it "manufactures and sells" the Lumipulse diagnostic assays at issue, including supplying one of the assays to its customer Labcorp. (D.I. 1, ¶¶ 11, 15.) FDI further explained the assays involve two separate components: an analyzer and a cartridge that contains several reagents. (*Id.* ¶¶ 36-39.) FDI asserts it does not infringe the '092 Patent because of alleged "fundamental differences" between the assay claimed in the '092 Patent and Fujirebio's Lumipulse assays. (*Id.* ¶ 50.)

In response to FDI's complaint, Quanterix asserted a counterclaim for infringement of the '092 Patent against both FDI and FRE in relation to the two accused Lumipulse assays. (*See generally* D.I. 20.) As the Amended Counterclaim alleges, FRE's name appears on the face of reagents and components—for example, a diluent—that is used with Lumipulse assays. (D.I. 20-

1, 46-47 & nn.23-25.)  Indeed, the reagent's Instructions for Use ("IFU") cited and excerpted in the claim chart incorporated with the Amended Counterclaims lists "Fujirebio Europe N.V." below the product name and again under the "Distributed by" section.  (D.I. 20-1, 46; D.I. 20, ¶¶ 61-62.)



(D.I. 20-1, 46 (highlighting added).)  Hence, Quanterix included FRE as a counter-defendant and raised the same infringement allegations against both FDI and FRE, acting alone and/or in concert, including as agents and affiliates of one another, with respect to the accused Lumipulse assays. (*See generally* D.I. 20.)

FDI and FRE's relationship is now crystallized in the record.  Both FDI and FRE's Rule 7.1 disclosures report that Fujirebio Holdings, Inc. is the parent corporation of each, and that H.U. Group Holdings, Inc. "indirectly owns 100% of the outstanding stock" of both FDI and FRE.  (*See* D.I. 4; D.I. 23.)  Their corporate relationship as sister companies (and as affiliates and agents) is established.

### B.  The Amended Counterclaim Includes Plausible Allegations of Infringement by FRE

In the Amended Counterclaim's sole Count, Quanterix realleges and incorporates by reference the preceding paragraphs of the Amended Counterclaims.  (*See* D.I. 20, ¶ 62.)  The "preceding paragraphs" that are realleged and incorporated by reference include paragraphs 7–8, where Quanterix identifies the accused assays and components—immunoreaction cartridges,

calibrators, and controls—and alleges domestic "mak[ing], us[ing], offer[ing] to sell, sell[ing], and import[ing]" within the meaning of 35 U.S.C. § 271(a). (D.I. 20, ¶ 7-8.) Paragraph 7 alleges that FRE (with "FENV" being the acronym applied rather than FRE as used in this brief)—on its own and through affiliates including FDI—develops, manufactures, imports, markets, offers to sell, sells, and distributes diagnostic tests and related reagents and components in the United States. (D.I. 20, ¶ 7.) Paragraph 8 alleges FDI and FRE, collectively and/or in concert, develop, manufacture, market, use, offer for sale, sell, and import the Lumipulse diagnostic assays and related reagents and components in the United States. (*Id.* ¶ 8.) Paragraph 9 alleges FRE imports, markets, and/or sells diagnostic tests and related reagents and components in the United States. (*Id.* ¶ 9.) The full text of paragraphs 7–9 are provided below:

> 7. This Court has personal jurisdiction over FENV because, inter alia, FENV, itself and through its subsidiaries, agents, and/or affiliates, including FDI, has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being hailed into court here. On information and belief, ***FENV, itself and through its subsidiaries, agents, and/or affiliates, including FDI, develops, manufactures, imports, markets, offers to sell, sells, and/or distributes a broad range of diagnostic tests and related reagents and components throughout the United States***, including in Delaware, and therefore transacts business within Delaware relating to Quanterix's counterclaim, and/or has engaged in systematic and continuous business contacts within Delaware.

> 8. In addition, this Court has personal jurisdiction over FDI and FENV because, among other things, on information and belief, (1) ***FDI and FENV collectively and/or in concert with one another, develop and manufacture the Lumipulse G pTau 217 Plasma Assay and the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay and related reagents and components*** accused of infringement herein, and (2) ***FDI and FENV collectively and/or in concert with one another, manufacture, distribute, market, use, offer for sale, sell and/or import the Lumipulse G pTau 217 Plasma Assay and the Lumipulse G pTau 217/β-Amyloid 1-42 Plasma Ratio Assay and related reagents and components in the United States***, including in Delaware, and derive or will derive

substantial revenue from the sale, use or consumption of those assays and reagents and components in Delaware.

9. In the alternative, this Court may exercise personal jurisdiction over FENV pursuant to FED. R. CIV. P. 4(k)(2) because (a) Quanterix's counterclaim arises under federal law; (b) FENV is a foreign company not subject to personal jurisdiction in the courts in any state, and (c) **FENV has sufficient contacts with the United States as a whole, including but not limited to importing, marketing and/or selling diagnostic tests and related reagents and components that are sold and used throughout the United States**, such that this Court's exercise of jurisdiction over FENV satisfies due process.

(D.I. 20, ¶¶ 7-9 (emphasis added).)

The "preceding paragraphs" realleged and incorporated by reference also include paragraphs 43 (plausibly alleging that on information and belief, Fujirebio—defined to include both FRE and FDI[2]—"*manufactures, imports into the United States, uses, offers for sale, and sells*" the accused products, along with reagents and components for performing those assays)[3], paragraph 50 (plausibly alleging that "[o]n information and belief . . . Fujirebio has been *making, using, importing, selling, and/or offering to sell* within the United States" the accused products, along with the cartridges and calibrators necessary for carrying out those assays)[4], and paragraph 61 (incorporating by reference Exhibit B, a claim chart illustrating how performance of the accused assays infringe at least claims 1 and 12 of the '092 patent, and specifically identifying FRE in conjunction with assay reagents, *see* D.I. 20-1, 45-47 & nn.23-25).[5]

Further, the publications and technical posters cited in—and attached to—the Amended Counterclaims further plausibly attribute development work on the accused Lumipulse assays to FRE as they expressly identify multiple authors as affiliated with FRE. (*See* D.I. 20-2, 181-182,

---

[2] *See* D.I. 20, 28.
[3] *Id.* ¶ 43 (emphasis added).
[4] *Id.* ¶ 50 (emphasis added).
[5] *See id.* ¶ 62; *see also id.* ¶¶ 51-60.

184-185 (cited in ¶ 47 of the Amended Counterclaims, Exhibits R and S identify FRE personnel as authors to the publications).)

In sum, the pleadings and incorporated exhibits plausibly attribute to FRE (1) direct infringement under § 271(a) by carrying out the Lumipulse diagnostic assays according to the IFU; induced infringement under § 271(b) by distributing IFUs, trainings, and marketing materials that encourage U.S. labs (including Labcorp) to practice the claimed methods; and (3) contributory infringement under § 271(c) by importing into and selling in the U.S. assay-specific cartridges and calibrators that are a material part of the inventions, are especially made or adapted for the infringing use, and lack substantial non-infringing uses.

## V.    ARGUMENT

### A.    Rules 8 and 12 Require Plausible Allegations of Infringement

Pleadings are governed by Rule 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED. R. CIV. P. 8(a)(2).  When evaluating motions to dismiss under Rule 12(b)(6), the inquiry is not about whether the non-moving party "will ultimately prevail[,]" but whether that party is "entitled to offer evidence to support the claims." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).  In other words, pleadings must have "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  Under *Twombly*, a court shall not dismiss a claim unless the moving party shows that the facts pleaded do not allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Thus, to survive a motion to dismiss under Rule 12(b)(6), a complaint need only "state a claim to relief that that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570).  When considering a motion to dismiss, the Court "accept[s] all factual allegations as true,

construe[s] the complaint in light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (citation omitted).

In patent cases, "it is logical to presume that a defendant has greater access to and, therefore, more information about its accused method." *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 469 (D. Del. 2016). The amount of public information available "varies widely, as does the degree of specificity with which any asserted invention is claimed." *Id*. Thus, Courts consider "whether the plaintiff at bar has provided sufficient information to allow the court to determine plausibility and to allow the named defendant to respond to the complaint." *Id*. Courts in this District have declined "to front-load the litigation process by requiring a detailed complaint in every instance[.]" *Id*.

**B. Counter-Plaintiff's References to Fujirebio and the Corresponding Factual Allegations Plausibly Allege That Each Counter-Defendant Engaged in the Accused Conduct (Direct and Indirect Infringement)**

FRE's complaint that the Amended Counterclaims are "unclear" as to who committed the accused acts because Quanterix sometimes uses "Fujirebio" collectively and because paragraphs 66–68 in the Count do not restate, defendant-by-defendant, every role played by each defendant ignores the governing standard and the incorporated factual context. Properly considered, Quanterix's allegations are sufficient and plausibly allege FRE infringes the '092 Patent.

At the Rule 12(b)(6) stage, Courts evaluate plausibility by reading the pleading as a whole, including expressly incorporated paragraphs and exhibits—Rule 8 does not require defendant-specific, element-by-element recitations. *Groove Digit., Inc. v. King.com, Ltd.*, No. 1:18-CV-00836-RGA, 2018 WL 6168615, at *1-2 (D. Del. Nov. 26, 2018); *TriDiNetworks Ltd. v. NXP-USA, Inc.*, No. CV 19-1062-CFC-CJB, 2020 WL 2514086, at *2-3 (D. Del. May 15, 2020); FED. R. CIV. P. 10(c). Courts read the complaint as a whole and draw reasonable inferences in the

pleader's favor without weighing competing factual theories or requiring evidentiary detail. *Groove Digit.*, 2018 WL 6168615, at \*1-2; *Nalco Co. v. Chem-Mod., LLC*, 883 F.3d 1337, 1347-50 (Fed. Cir. 2018).

Collective references to defendants (or shorthand) are permissible where incorporated allegations identify accused products and plausibly tie each defendant to at least one infringing act—i.e., a complaint that "collectively refers to defendants meets Rule 8's pleading standard if 'it can be reasonably inferred that each and every allegation is made against each individual defendant.'" *Groove Digit.*, 2018 WL 6168615, at \*1 (citation omitted) (denying dismissal and accepting collective "King" references where the complaint and incorporated materials tied each entity to the accused games and distribution channels); *TriDiNetworks*, 2020 WL 2514086, at \*1-2 ("not impermissible *per se*" to refer to defendants collectively; holding that Rule 8 was satisfied because the pleading alleged each entity engaged in at least one infringing act and plausibly tied the U.S. entity to making and testing in the United States). For direct infringement, identifying the patent and accused products with basic factual context is enough—element-by-element and defendant-by-defendant pleading is not required. *See Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1259-60 (Fed. Cir. 2018).

Read under these standards, the Amended Counterclaims are clear. Paragraphs 7–8—which are incorporated by reference into the Count—allege that FRE "itself and through its subsidiaries, agents, and/or *affiliates, including FDI*, develops, manufactures, imports, markets, offers to sell, sells, and/or distributes" diagnostic tests and related reagents and components (D.I. 20, ¶ 7 (emphasis added)), and that FDI and FRE "collectively and/or in concert . . . develop and manufacture" the accused Lumipulse assays, reagents, and components (*id.* ¶ 8), and further, that FDI and FRE "collectively and/or in concert . . . manufacture, distribute, market, use, offer for

sale, sell and/or import" the accused Lumipulse assays, reagents, and components into the United States. (*Id.*) Paragraph 9—also incorporated by reference in the Count—further alleges that FRE "import[s], market[s] and/or sell[s] diagnostic tests and related reagents and components" in the United States. (*See* D.I. 20, ¶ 9.) The Count then identifies the accused assays (Lumipulse G pTau 217 Plasma Assay and the Lumipulse G pTau217/ß-Amyloid 1-42 Plasma Ratio Assay) and the core components (immunoreaction cartridges, calibrators, controls), and allege domestic "mak[ing], us[ing], and offer[ing] to sell, sell[ing], and import[ing]." (*Id.* ¶¶ 66-68.) This is precisely the sort of product-specific notice found sufficient to state a claim for infringement. *See Groove Digit.*, 2018 WL 6168615, at *1-2 (upholding complaint that collectively refers to defendants where the infringement count identifies the accused products, the asserted claims, and explains the basis of the infringement); *TriDiNetworks*, 2020 WL 2514086, at *1-2 (upholding complaint that refers to "each of" the defendants making and testing the accused products in the U.S.).

The incorporated claim chart (Exhibit B) removes any doubt about which defendant is tied to direct infringement. It quotes the Lumipulse reagent Instructions For Use and technical materials in the accused products and methods and shows "Fujirebio Europe N.V." printed immediately below the product name and again in the IFU's "Distributed by" field—facts that plausibly tie FRE to the distribution of reagents and components and to the instructions followed by U.S. end users. (D.I. 20-1, 45-47 & nn.23-25.) Those materials sit alongside the pleading's role-tying allegations (D.I. 20, ¶¶ 7-9, 66-68), which identify the accused Lumipulse assays (and core components (immunoreaction cartridges, calibrators, controls) and allege manufacturing, distribution, marketing, using, offering to sell, selling, and importation. FRE's motion never grapples with the IFU evidence—particularly with respect to how Fujirebio Europe N.V. is

expressly named—even though it is incorporated into the pleading and is central to the Rule 8 attribution analysis the motion puts at issue. (*See generally* D.I. 22.)

The indirect infringement theories are likewise anchored to specific, incorporated facts relevant to both defendants. The Amended Counterclaim pleads knowledge and specific intent by alleging that Fujirebio (collectively including FDI and FRE) provides IFUs, trainings, manuals, and marketing materials instructing end users (including U.S. laboratories such as Labcorp) to perform the accused steps—facts courts routinely accept under Rule 8. (*See* D.I. 20, ¶¶ 7-8, 67; D.I. 20-1, 38-69; 35 U.S.C. § 271(b); *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766-71 (2011) (holding § 271(b) requires knowledge that the induced acts constitute infringement); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336-39 (Fed. Cir. 2012) (reversing dismissal of induced-infringement claims where manuals, instructions, and marketing materials plausibly showed knowledge and specific intent to encourage customers' direct infringement, and affirming dismissal of contributory infringement claims where the pleadings/exhibits suggested substantial non-infringing uses). The Amended Counterclaim also pleads that Fujirebio (collectively including FDI and FRE) makes, uses, imports, sells or offers to sell assay-specific cartridges and calibrators that are a material part of the invention, especially made or adapted for the infringing use, and lack substantial non-infringing uses—again tied to the chart's component descriptions. (D.I. 20, ¶¶ 7-8, 43, 50 68; D.I. 20-1, 40, 43, 51; 35 U.S.C. § 271(c).)

FRE's reliance on a few paragraphs in the Count (¶¶ 66-68) to claim "uncertainty" as to what acts of infringement it is accused of performing ignores Rule 10(c) and the incorporated allegations and exhibits. Contrary to FRE's arguments, this is not *M2M* or *North Star*, where the pleadings lacked defendant-specific attribution (and, in *North Star*, any facts showing each

defendant's U.S. activity).  *M2M Sols. LLC v. Telit Commc'ns PLC*, No. 14–1103–RGA, 2015 WL 4640400, at *3-5 (D. Del. Aug. 5, 2015) (dismissing where the complaint lumped Telit UK and Telit US under "Telit" and did not identify which particular defendant was responsible for which accused products or acts; no defendant-specific attribution or U.S.-activity facts); *N. Star Innovations, Inc. v. Toshiba Corp.*, No. 16–115–LPS–CJB, 2016 WL 7107230, at *2 (D. Del. Dec. 6, 2016) (recommending dismissal where the counts used "Defendants" generically and, even with incorporation, failed to allege that each defendant committed at least one particular infringing act in the United States).  Here, the Amended Counterclaim identifies the accused assays and components, ties them to U.S. manufacturing, distribution, marketing, use, offering for sale, sales, and importation, and provides role-specific facts—and then reinforces those facts with IFUs and technical publications incorporated into the pleading.  *See Groove Digit.*, 2018 WL 6168615, at *1-2 (denying dismissal where the complaint and incorporated materials tied all three "King" entities to the accused games and distribution channels); *TriDiNetworks*, 2020 WL 2514086, at *1-3 (rejecting "lump[ing]" challenges, holding that use of collective "NXP" not "impermissible *per se*" where the first amended complaint alleged that each of NXP-USA and NXP B.V. engaged in infringing acts and plausibly tied the U.S. entity to the making, testing, demonstrating the accused products in the United States); *IOENGINE, LLC v. PayPal Holdings, Inc.*, Nos. 18-452-WCB, 18-826-WCB, 2019 WL 330515, at *11-12 (D. Del. Jan. 25, 2019) (in denying dismissal by foreign affiliate (Ingenico France), the Court rejected "lump[ing]" arguments, holding that allegations of coordinated roles with U.S. affiliates plausibly ties the foreign entity to the accused systems and U.S. commercialization at the pleading stage); *Tigo Energy Inc. v. SMA Solar Tech. Am. LLS*, No. 22-915-GBW, 2023 WL 6990896, at *11-12 (D. Del. Oct. 23, 2023) (denying dismissal as to German parent company, holding that allegations of coordinated brand/website,

certifications, and U.S. sales/marketing with the U.S. affiliate plausibly alleged agency and defeated the "lumping" challenge).

FRE's "collective unit" theory fails under this District's rule that collective shorthand is permissible where the pleading—read as a whole, including incorporated exhibits—plausibly supports a reasonable inference that each named defendant engaged in at least one infringing act. *Groove Digit.*, 2018 WL 6168615, at *1-2; *TriDiNetworks*, 2020 WL 2514086, at *1-3. When that inference is supported, collective references do not render §§ 271(a)-(c) allegations deficient. *See Disc Disease Sols.*, 888 F.3d at 1260 (fair notice found where patent and accused products identified)*; Nalco*, 883 F.3d at 1350 (plausibility, not proof, governs).

Those principles fit the pleadings here. As explained above, paragraphs 7–9 (incorporated into the Count) allege that FRE itself and through its affiliates including FDI "develops, manufactures, imports, markets, offers to sell, sells, and/or distributes" the Lumipulse assays, reagents, and components in the United States (D.I. 20, ¶ 7), that FDI and FRE, "collectively and/or in concert . . . manufacture, distribute, market, use, offer for sale, sell and/or import" the Lumipulse assays, reagents, and components in the United States (*id.* ¶ 8), and that FRE "import[s], market[s] and/or sell[s] diagnostic tests and related reagents and components that are sold and used" in the United States. (*Id.* ¶ 9.) Exhibit B of the Amended Counterclaims—which is incorporated by reference—quotes the Lumipulse reagent IFU and shows "Fujirebio Europe N.V." printed immediately below the product name and again in the IFU's "Distributed by" field, tying FRE to distributed components and instructions followed by U.S. end users. (D.I. 20-1, 45-47 & nn.23-25.) On these pleaded and incorporated facts, the shorthand "Fujirebio" does not obscure who did what; it reflects coordinated conduct plausibly attributable to both named defendants, which is all Rule 8 requires. *See Disc Disease Sols.*, 888 F.3d at 1260; *Nalco*, 883 F.3d at 1347-50; *Mayne*

*Pharma Int'l PTY Ltd. v. Merck & Co.*, No. 15-438-LPS-CJB, 2015 WL 7833206, at *3 (D. Del. Dec. 3, 2015) (determining that the incorporation by reference of the preceding paragraphs of the complaint was sufficient to plead the elements of a cause of action).

FRE's cases (*Neology*, *T-Jat*, *M2M*, and *N. Star*) involved conclusory group allegations with no attribution or U.S.-activity facts and do not impose a categorical bar on collective shorthand where, as here, other paragraphs and exhibits plausibly connect each defendant to at least one infringing act. *See Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, No. 13–2052–LPS, 2014 WL 4675316, at *4-7 (D. Del. Sept. 19, 2014) (granting dismissal of indirect infringement claims where the complaint lumped "Defendants" together, failed to incorporate defendant-specific facts into the counts, and did not allege how customers' use of identified products infringed); *T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, No. 16–581–RGA–MPT, 2017 WL 896988, at *6-7 (D. Del. Mar. 7, 2017) (recommending dismissal where the complaint used collective labels ("Expedia," "Defendants"), did not identify which entity owned or sold the accused technology, and failed to plead facts connecting each defendant to U.S. acts); *M2M Sols.*, 2015 WL 4640400, at *4 (dismissing claims of indirect infringement where the pleader fused a U.S. and U.K defendant and never identified who disseminated training or sold components in the U.S.); *N. Star Innovations*, 2016 WL 7107230, at *2.

### C.  Collective Shorthand Is Proper for Related Sister Companies and No Parent-Subsidiary Showing Is Required

FRE's premise—that Quanterix must plead alter-ego or a parent-subsidiary hierarchy to refer to "Fujirebio" collectively (D.I. 22, § IV.B)—is wrong on the law and misapplies the cases it cites.  Agency attribution at the pleading stage extends to sister affiliates that operate as "two arms of the same business group," act in concert, and transact at nearer-than-arm's length—veil piercing is not a prerequisite to survive a Rule 12(b)(6) motion.  *See Robert Bosch LLC v. Alberee*

*Prods., Inc.*, 70 F. Supp. 3d 665, 678-81 (D. Del. 2014) (citations omitted) (crediting allegations and record showing coordinated roles across affiliated entities—foreign component maker, U.S. assembler, and U.S. seller—and sustaining jurisdiction on a stream-of-commerce/dual-jurisdiction theory where defendants used an established U.S. distribution channel; rejecting the notion that formal corporate separateness insulates related actors at the threshold); *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 863 F. Supp. 186, 188-89 (D. Del. 1993) (treating two wholly-owned sister affiliated as "two arms of the same business group" for attribution purposes and holding that acts of the U.S. distributor could be attributed to the foreign manufacturer based on close corporate ties and coordinated commercialization). And when the Amended Counterclaim, read as a whole (including incorporated exhibits), plausibly supports that each defendant engaged in at least one infringing act, the use of collective shorthand does not render §§ 271(a)-(c) allegations deficient. *Groove Digit.*, 2018 WL 6168615, at *1-2 (collective shorthand permissible where the complaint and incorporated materials tie each entity to the accused products and conduct); *TriDiNetworks*, 2020 WL 2514086, at *1 (explaining that collective references "not impermissible per se" and that Rule 8 is satisfied if the pleading plausibly alleges each defendant engaged in at least one infringing act).

As explained above, the allegations and incorporated materials, including paragraphs 7–9 and Exhibit B of the Amended Counterclaim satisfy that standard. Paragraphs 7–8 allege FRE's involvement with developing, manufacturing, importing, marketing, offering to sell, selling, and distributing the accused assays and related reagents/components either "itself and through its subsidiaries, agents, and/or affiliates, including FDI," (D.I. 20, ¶ 7), or "collectively and/or in concert" with FDI, (*id.* ¶ 8). Exhibit B of the Amended Counterclaim quotes the Lumipulse reagent IFU that identifies Fujirebio Europe N.V. as the sponsor and distributor, thereby tying FRE to

distributed components and the instructions end-users follow.  (D.I. 20-1, 45-47 & nn.23-25.)

Further, the publications and technical posters cited in—and attached to—the Amended

Counterclaims identify multiple authors as affiliated with FRE, plausibly attributing development

work on the accused Lumipulse assays to FRE.  (D.I. 20-2, 181-182, 184-185 (cited in D.I. 20, ¶

47) (Exs. R, S).)  Additionally, both entities' Rule 7.1 statements identify the same parent company

and 100% indirect ownership by the same entity, which the Court may take judicial notice of for

the limited fact of corporate affiliation.  (D.I. 4; D.I. 23.) *Data Health Partners, Inc. v. Teladoc

Health, Inc*., 734 F. Supp. 3d 315, 320 (D. Del. 2024) (explaining that "[i]n considering a motion

to dismiss, a district court may consider any document integral to or relied upon in a complaint

and may take judicial notice of any public records."); *Buck v. Hampton Twp. Sch. Dist*., 452 F.3d

256, 260 (3d Cir. 2006) (same); FED. R. EVID. 201.  Taken together, the record supports a plausible

inference of coordinated conduct by related sister companies FDI and FRE with respect to the

same accused products and process, and thus acts of infringement.

The cases relied on by FRE are inapposite.  In *M2M Solutions LLC v. Telit Communications

PLC*, dismissal turned on the plaintiff's failure to "identify which particular defendant or

defendants are responsible for which alleged infringing products, process or method"—i.e., no

defendant-specific product/act attribution at all.  2015 WL 4640400, at *3.  *T-Jat Systems 2006

Ltd. v. Expedia, Inc. (DE)* is similar: while acknowledging that minimal facts can suffice to plead

inter-company coordination, the court faulted the complaint for not incorporating specifics into the

counts and for never alleging which Expedia entity owned or sold the accused technology.  2017

WL 896988, at *6-7. The Court in *Blackberry Ltd. v. Nokia Corp.* dismissed claims against foreign

affiliates because the pleading was "based entirely" on corporate relationship and lacked any facts

that those entities "make[], use[], sell[], or offer[] to sell" accused products in the United States;

the claims against the U.S. operating company proceeded. No. 17-cv-155-RGA, 2018 WL 1401330, at *2 (D. Del. Mar. 20, 2018). These are omission cases—no defendant-specific hooks, no incorporated role-tying facts, and (as to *Blackberry*) no U.S. nexus for the non-U.S. affiliate.

By contrast, the decisions most on point endorse collective shorthand where the pleading and incorporated materials plausibly link each entity to the accused conduct. In *IOENGINE, LLC v. PayPal Holdings, Inc.*, the Court rejected a "lumping" attack and credited allegations that the defendants acted "individually and collectively," given the complaint's factual context connecting each to the accused systems. 2019 WL 330515, at *11-12. The Court in *British Telecommunications PLC v. IAC/InteractiveCorp* likewise accepted collective references where detailed allegations supported a reasonable inference of coordinated commercialization across related entities. 356 F. Supp. 3d 405, 409-10 (D. Del. 2019). And in *Tigo Energy Inc. v. SMA Solar Technology America LLS*, the Court specifically declined to dismiss on "lumping" grounds where the complaint alleged coordinated roles—including for a foreign affiliate—in U.S. commercialization of the same accused product. 2023 WL 6990896, at *11. The Amended Counterclaim here follows suit.

In sum, Delaware practice permits collective shorthand for related sister companies when, as here, the Amended Counterclaim and incorporated materials plausibly support coordinated conduct and tie each entity to the accused assays and U.S. activity. No alter-ego or parent-subsidiary allegation is required to survive a Rule 12(b)(6) motion.

### D. Should the Court Find Quanterix's Complaint Deficient, Quanterix Should Be Granted Leave to Amend

Quanterix has sufficiently pleaded its infringement claim against FRE; however, to the extent the Court disagrees, Quanterix respectfully requests leave to amend its counterclaim to

address any alleged deficiencies.[6]  Under Rule 15(a)(2), a party may amend its pleading with the court's leave and "[t]he court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).  The decision to grant or deny leave to amend is within the discretion of the court.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  In the absence of "undue delay, bad faith or dilatory motive on the part of the movant," amendment should be freely granted, unless it would be futile or unfairly prejudicial to the non-moving party.  *See id.*; *Greatbatch Ltd. v. AVX Corp.*, No. CV 13-723-LPS, 2014 WL 491683, at *1 (D. Del. Feb. 4, 2014).

To the extent that FRE argues that it would be futile to allow Quanterix to amend its complaint, FRE is mistaken. Quanterix's second amended complaint would attach and plead from documents that attribute U.S. commercialization roles to each affiliate and tie FRE directly to the accused Lumipulse assays, reagents, and components, including: (i) the Terms and Conditions from Fujirebio's U.S. website (which is used to market the accused Lumipulse assays to U.S. customers) stating that the site is "owned and maintained by Fujirebio Europe N.V."; (ii) Safety Data Sheets for reagents and components identifying FRE as the manufacturer/supplier and FDI as U.S. distributor/information contact; (iii) U.S. IFUs listing FRE in the "Distributed by" field; and (iv) the "Global Leadership" webpage for Fujirebio Holdings, Inc., listing Monte Wiltse as a board member of FDI and FRE's parent company.

This case is currently in its early stages—no discovery has taken place, and the Court has yet to enter a scheduling order.  The purpose of Quanterix's proposed amendment is to provide FRE the facts it claims it needs.  Granting Quanterix leave to amend would not unfairly prejudice FRE given the early stages of this case.  *See The Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-*

---

[6] For the Court's convenience, Quanterix attaches Exhibit 1 (proposed Second Amended Complaint and associated exhibits) and Exhibit 2 (redline comparison to the First Amended Complaint).

*1 Ins. Trust*, No. C.A. 09-300-LPS, 2011 WL 710970, at *3 (D. Del. Feb. 22, 2011) (amending the pleadings in response to a motion to dismiss "does not prejudice any party" when it is "made for the appropriate purpose of adding more detailed allegations"). In contrast, refusing Quanterix's leave and dismissing the Amended Counterclaim as to FRE[7] would unduly prejudice Quanterix and result in fundamental unfairness given that neither FDI nor FRE raised any concerns with the pleading in the nearly two months it had to respond, which culminated in the underlying motion.

FRE's "no more leave" cases are inapposite and none are binding on this Court. *Barmapov v. Amuial* and *Johnson v. Foster* are Eleventh Circuit "shotgun pleading" where the judges told the plaintiffs exactly how to fix confusing, lumped pleadings; the plaintiffs ignored those instructions and refiled sprawling complaints that still mashed the defendants together, so the courts dismissed with prejudice—that bears no resemblance to a focused, exhibit-anchored counterclaim in the District of Delaware that ties each defendant to the accused assays and components. *Barmapov v. Amuial*, 986 F.3d 1321, 1325-26 (11th Cir. 2012); *Johnson v. Foster*, No. 4:21-CV-219 (CDL), 2022 WL 17340518, *1 (M.D. Ga. Nov. 30, 2022). *In re Processed Egg* involved an antitrust complaint amended multiple times over several years that still failed to plead the dates and facts needed to toll statutes of limitations, and thus, the court ended it with prejudice—a far cry from Rule 8 product/actor attribution in a patent case. *In re Processed Egg Prods. Antitrust Litig.*, 931 F. Supp. 2d 654, 665 (E.D. Pa. 2013). *Sullivan* granted an unopposed motion to dismiss based on substantive defects (no viable claim), not any collective-pleading or leave-to-amend issue. *Sullivan v. Borough of Hellertown*, No. CIV.A. 02–8885, 2003 WL 21664848, at *1 & n.1 (E.D. Pa. June 25, 2003). These non-binding opinions do not map onto

---

[7] As discussed above, there is no legal basis to grant FRE's drastic relief of dismissing the Amended Counterclaim as to co-defendant FDI, who initiated this lawsuit and did not move to dismiss on the grounds FRE relies on.

Quanterix's focused, exhibit-supported counterclaim.

## VI.    CONCLUSION

For all the foregoing reasons, FRE's motion to dismiss should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*
_____

Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
Ben Yenerall (#7132)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com
cclark@morrisnichols.com
byenerall@morrisnichols.com

OF COUNSEL:

Elizabeth M. Flanagan
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402
(312) 881-6383
bflanagan@Cooley.com

*Attorneys for Defendant*

Orion Armon
COOLEY LLP
1144 15th Street
Suite 2300
Denver, CO 80202
(720) 566-4000
oarmon@cooley.com

October 24, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 24, 2025, upon the following in the manner indicated:

Monté T. Squire                                                      *VIA ELECTRONIC MAIL*
DUANE MORRIS LLP
1201 N. Market St., Suite 501
Wilmington, DE 19801
*Attorneys for Plaintiff*

Anthony J. Fitzpatrick                                              *VIA ELECTRONIC MAIL*
Christopher S. Kroon
Poornarchita H. Dwarakanath
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110-1724
*Attorneys for Plaintiff*

Thomas J. Kowalski                                                 *VIA ELECTRONIC MAIL*
DUANE MORRIS LLP
22 Vanderbilt
335 Madison Avenue, 23rd Floor
New York, NY 10017-4669
*Attorneys for Plaintiff*

*/s/ Jeremy A. Tigan*
_____
Jeremy A. Tigan (#5239)